IN THE MATTER OF THE ESTATE OF ANNIE MAY STENGEL, DECEASED.

INEZ STENGEL GAY, MOVANT-APPELLANT, v. KARL RAYMOND STENGEL, EXECUTOR OF THE ESTATE OF ANNIE MAY STENGEL, DECEASED, DEFENDANT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued March 23, 1959—Decided April 10, 1959.

178

Before Judges GOLDMANN, FREUND and HANEMAN.

*Mrs. Inez Stengel Gay* argued the cause *pro se.*

*Mr. Frederick M. Rollenhagen* argued the cause for respondent (*Messrs. Nugent & Rollenhagen,* attorneys).

PER CURIAM. Inez Gay appeals from an order of the Chancery Division, entered May 9, 1958, denying her motion to have the court set aside its earlier order of December 13, 1957 (entered December 16, 1957) requiring her to file a power of attorney with the Superior Court Clerk to receive service for her of all papers in the action. The notice of appeal was filed June 6, 1958.

Annie May Stengel died a resident of Monmouth County on January 22, 1956, survived by her two sons, respondent Karl Raymond Stengel and Henry Ivan Stengel, and a granddaughter, Inez Stengel Gay, only living child of a deceased daughter. Her purported last will and testament, dated January 27, 1949, left her estate to Karl if living at her death, and if not, to Henry. She left nothing to Inez Gay "for the reason that she is amply provided for otherwise than through the medium of my estate and I have made numerous gifts to her during my lifetime." The will nominated Karl her sole executor, but if he predeceased her, Henry.

Karl proceeded to have the will probated in solemn form in the Chancery Division. He filed a complaint reciting the names and addresses of decedent's heirs and next of kin, including Mrs. Gay, whose address was given as 140 East 46th Street, New York City, where she had been living. An order to show cause issued, returnable March 9, 1956, why the alleged will should not be admitted to probate and letters testamentary issued. The court directed that a copy of the complaint and order be served on the named persons in interest either personally or by unregistered mail, at least 20 days before the return day. The unregistered letter addressed by proponent's attorney to Mrs. Gay at her Man-

hatten address was returned with notations of "Unclaimed" and "Postage due 3 cents."

The probate hearing proceeded as scheduled on March 9, 1956, Mrs. Gay absent. The Chancery Division judge took the testimony of the three subscribing witnesses and Karl Raymond Stengel, and subsequently on March 13, 1956 entered an order admitting the document to probate. Karl duly qualified as executor, letters testamentary issued, and he promptly undertook administration of the estate.

Claiming that she had no knowledge of the probate until August 1956, Mrs. Gay, acting *pro se,* served notice (that and nothing more) on Karl's attorneys that she would apply to the Chancery Division on September 28, 1956 for an order to show cause why the judgment of probate should not be set aside. The matter came on before the same judge who had sat in the probate proceedings, and he dismissed the motion. Mrs. Gay then retained counsel and moved to set this order aside. In her accompanying petition and affidavit she alleged she had resided at the New York City address until June 1955; that at the time of the probate proceedings she was living in South Salem, N. Y.; and that she had returned to the Manhattan address after the birth of a child late in March 1956. She explained how she had belatedly learned of the probate after extensive investigation, and went on to allege that she was ready to prove that her grandmother was incompetent and incapable of making a will on January 27, 1945, and that the instrument was the result of undue influence exercised by Karl. After considering the counter-affidavits filed and the briefs and argument of counsel, the same Chancery Division judge on November 2, 1956 refused to vacate his earlier order of dismissal. In doing so he observed that Mrs. Gay was notorious for her dilatory tactics and for imposing on the courts and attorneys of this State. He recalled the several actions she had initiated, all involving her grandmother and the estate, and stated that she was well experienced in court matters. He refused to give credence to her affidavits.

On appeal this court held (Docket A–106–56, unreported decision of May 27, 1957) that in light of the verified petition and affidavits the interests of justice required that Mrs. Gay be afforded her day in court so that she might inquire into the issues of mental incompetency and undue influence she had raised. Our mandate reversing the order of November 2, 1956 issued on May 27, 1957.

On November 14, 1957 Mrs. Gay, again appearing *pro se,* moved for "settlement of the order of reversal," her motion being accompanied by a form of order reversing the order of November 2, 1956 and the preceding order of September 28, 1956, and directing Karl Raymond Stengel to show cause on December 12, 1957 why the judgment of probate should not be set aside. On the return day counsel in opposition pointed out to the court that the judge who had previously sat in the matter had refused to sign the proposed order unless Mrs. Gay first designated someone in New Jersey to accept service of papers. Counsel represented that because of her New York residence there was the constant problem of giving notice and effecting proper service. When the judge said he would sign the order if Mrs. Gay filed a power of attorney with the Superior Court Clerk to accept service, Mrs. Gay's only objection was that papers forwarded to her by the clerk might be delayed in the mails. The court then stated that an additional five days would be allowed. This was satisfactory to Mrs. Gay and she agreed to prepare the necessary power of attorney. Accordingly, an order was entered December 13, 1957 directing her to file the power of attorney with the clerk and ordering that there be five days' additional notice on service of all proceedings.

Mrs. Gay did absolutely nothing. She prepared and filed no power of attorney. She did not appeal. Instead, on March 3, 1958 she moved to set the order aside because it was "inequitable and would work undue hardship." Her accompanying affidavit alleged that after the December hearing she had drawn up a form of order and mailed it to

the court for signing. She had then gone to Cuba. On her return, and "under the impression" that the order had not yet been signed, she telegraphed the court and learned that an order had been filed in December. The "undue hardship" claimed by Mrs. Gay was that she visited Cuba several times a year, and mail service was unreliable. At the argument on the motion she reaffirmed her New York City residence, adding: "Naturally I am away temporarily from my residence. Everyone goes to Florida and they go to various places on vacation." Opposing counsel again cited instances of difficulties encountered in getting in touch with Mrs. Gay, and this as recently as within the week. The court denied the motion on May 9, 1958, and entered the order under appeal.

Mrs. Gay, once more arguing *pro se,* contends that the Chancery Division judge could not require her to file a power of attorney with the clerk. She maintains that *R. R.* 4:5–2 is controlling: a party not represented by an attorney should be served with papers by registered or certified mail, return receipt requested, "addressed to him at his last known address or, if no address is known, by mailing it to the clerk of the court."

The overall purpose of our rules of civil practice is to secure simplicity in procedure, fairness in administration, and the elimination of unjustifiable expense and delay. *R. R.* 4:1–2. The genius of our judicial system is its ability to accommodate itself to situations however special. If necessary to facilitate business and advance justice, a court is justified in moulding the service rule, *R. R.* 4:5–2, to meet a particular situation such as the one here presented, subject always to the overriding consideration that due process be accorded the litigant and essential justice subserved. *Cf. R. R.* 1:27A; 4:121.

Viewed against the background of what this court has heretofore had occasion to describe as Mrs. Gay's "inordinate litigious propensities"; her dilatory tactics; her unreliable representations, *e. g.,* her promise to the Chancery Division

judge to file a power of attorney, and her failure to do so (for a more immediate instance, see below) ; her engaging and dropping of counsel, with alternating and frequent appearances *pro se;* her moving about from place to place in New Jersey or New York, visits to Connecticut, to Cuba, to Florida (these details are culled from the files of other actions) without notice of her whereabouts, all demonstrate the eminent practicality of the method of service proposed by the two trial judges who dealt with this phase of Mrs. Gay's excursions into our courts.

At the oral argument on this appeal, Mrs. Gay sought assurance that she would not be prejudiced by filing the power of attorney with the clerk. We directed that in addition to service on the clerk, all papers be served upon her in the usual manner at her last known address. Opposing counsel readily agreed. Mrs. Gay then gave the court and counsel her firm promise that the power of attorney would forthwith be mailed to the clerk. She did not do so. When the deputy clerk made inquiry at the address she left with the court concerning the delay, he found she could not be reached. She was visiting in New York State.

The order of December 13, 1958 directing the filing of the power of attorney is not a final judgment or order. It did not dispose of the action or a distinct branch thereof. The litigation subsists. See *Adams v. Adams,* 53 *N. J. Super.* 424, 428 *et seq.* (1959), in which we recently discussed certain aspects of the "final" or "interlocutory" nature of judgments or orders. An otherwise interlocutory order cannot become "final" merely because a party's failure to comply with it will bar him from proceeding with the action. If this were so, then almost any interlocutory order would have to be considered final. Consider, for example, an order to answer interrogatories, to produce documents, or to appear for trial on a certain date. Such orders are clearly interlocutory, although an unexcused refusal to comply with them could result in a dismissal. This surely does not convert them into final orders. Were Mrs. Gay to refuse,

absolutely and finally, to comply with the order below, submit to a final order of dismissal, and then appeal, she would be appealing from a final order. This she has not done.

No timely application was made to appeal the order of December 13, 1957, as required by *R. R.* 2:2–3(*a*). Even were we to assume, as Mrs. Gay would have us, that the order was final, there was no appeal within time, *R. R.* 1:3–1(*b*), *R. R.* 2:3, or within the extended period available under *R. R.* 1:27*B*(*d*). The motion of March 3, 1958 to set aside that order was an attempt to breathe new life into a situation already become moribund through inaction. The result was the May 9, 1958 order of denial. If this exercise in indirection had any validity at all, Mrs. Gay did not timely seek review in this court. She brought this appeal— as from a final order—on June 6, 1958. She was out of time; the new order was just as interlocutory as the first.

We note in passing that the motion to set aside the December 13, 1957 order did not state as a reason for its allowance any of the specific grounds provided by *R. R.* 4:62–2—not even under subsection (f), "any other reason justifying relief from the operation of the judgment or order." All Mrs. Gay claims is that the order would be inequitable and work undue hardship. She produced no persuasive facts or argument to shore up this generality.

 The appeal will be dismissed. We observe, however, that appellant apparently now has a New Jersey residence. She made the unqualified representation at oral argument that she has returned to live at Elm Street, Montclair, and that this residence is permanent—at least, we gather, for the foreseeable future. This fact should be called to the attention of the trial court; perhaps it will help to bring the attack upon the probate proceedings to an earlier trial and determination.